Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
Entiendo que el Tribunal de Apelaciones concluyó correctamente que la designación de un animal o una planta como especie en peligro de extinción y de un área como hábitat natural crítico esencial, que decide establecer el Departamento de Recursos Naturales y Ambientales (DRNA), no constituyen enmiendas a su Reglamento Núm. 6766 para Regir las Especies Vulnerables y en Peligro de Extinción de 2004.([1]) Se trata, más bien, de la aplicación de las normas establecidas en el reglamento para la identifi-cación de estas especies y estos hábitats. Por eso, en este caso no era necesario que el DRNA cumpliera con los re-quisitos que impone la Ley de Procedimiento Administra-tivo Uniforme (LPAU) para la aprobación y modificación de reglamentos, y la designación que hizo del coquí llanero y su hábitat entraban en vigor sin tenerse que presentar ante el Departamento de Estado.([2]) Por lo mismo, la acción administrativa no estaba sujeta a una impugnación de su faz por incumplir con el proceso de reglamentación. Sin embargo, el Tribunal de Apelaciones tenía jurisdicción para atender un recurso de revisión administrativa en el cual analizara si la orden de designación emitida por el DRNA al amparo de su Reglamento 6766, previamente *703 aprobado, cumplió con los criterios establecidos en éste.([3])
Para la mejor comprensión de la controversia de este caso, es preciso distinguir entre la designación de especie y hábitat que hace el DRNA, luego de una evaluación por parte de sus peritos y el proceso que sigue el Departamento para hacer tal designación, cuando quien la solicita es una persona o entidad externa a la agencia. Nuestro ordena-miento dispone requisitos distintos para tramitar cada una. La primera tiene que cumplir con ciertos requeri-mientos de notificación y participación ciudadana, pero no con todas las disposiciones de la LPAU, mientras que la evaluación de la segunda debe observar todas las reglas del procedimiento administrativo uniforme.
La Ley Orgánica del DRNA impone a este departamento el deber de hacer valer las políticas públicas y los progra-mas de conservación y mejor utilización de los recursos naturales en Puerto Rico.([4]) Además, entre las facultades que confiere al Secretario de esta agencia, incluye la de adoptar reglamentos con el fin de designar y preservar las especies de vida silvestre amenazadas o en peligro de extinción.([5]) Esos reglamentos deben garantizar el derecho de la ciudadanía a participar mediante vistas públicas.([6])
*704 Asimismo, la Ley de Vida Silvestre declara como política pública del Gobierno de Puerto Rico la protección de las especies de vida silvestre y del hábitat natural de estas, y brinda unos criterios generales para su modificación. ([7]) Además, crea una junta con biólogos especialistas en vida silvestre para asesorar al Secretario del DRNA con rela-ción a la designación de hábitats críticos y la adquisición de terrenos para reservas([8]) Esta ley dispone que cual-quier organización que promueva la conservación de la vida silvestre puede solicitar la designación de una especie como vulnerable o en peligro de extinción y la de su hábitat como natural crítico, presentando información científica que lo justifique; el Departamento resolverá esa solicitud conforme a la LPAU.([9]) La Ley de Vida Silvestre también faculta al Secretario del DRNA a promulgar reglamentos relativos a la designación de especies vulnerables o en pe-ligro de extinción y tomar las medidas necesarias para su perpetuación. ([10])
El DRNA adoptó el Reglamento 6766 para guiar sus procedimientos en la ejecución de la facultad de designar y preservar especies amenazadas que le confiere su Ley Orgánica. El poder delegado al Secretario del DRNA para identificar especies en peligro e imponer restricciones con el fin de protegerlas está limitado por los criterios que es-tablece el Reglamento 6766 en su Artículo 3, sobre Identi-ficación, Designación y Determinación de Especies Vulne-rables y en Peligro de Extinción. En el Artículo 3.01 del Reglamento se describen los factores que se utilizan para ubicar a las especies identificadas en una de cinco catego-rías según el nivel de protección que requieren. El Artículo 3.02 ordena considerar también otros aspectos, como la sobre utilización de la especie, la depredación y la insuficien- *705 cia de mecanismos de protección. El Artículo 3.04 indica que el Secretario tomará la determinación sobre la desig-nación de especies basándose solamente en información científica y luego de revisar la condición en que se encuen-tra la planta o el animal. Este artículo también le concede discreción al Secretario del DRNA para tomar acción inme-diata cuando determina que se debe proteger a una especie como medida de emergencia.
El Artículo 3 sólo menciona la LPAU en su Artículo 3.03, que permite que personas u organizaciones dedicadas a promover la conservación de especies puedan solicitarle al Secretario que designe una especie como vulnerable o en peligro de extinción o su hábitat como natural crítico.([11]) Le exige a la persona o entidad que fundamente su petición con información científica y le exige al DRNA resolver la solicitud de acuerdo con el procedimiento establecido en la LPAU o con cualquier otro mecanismo análogo que promulgue.([12]) Este requisito permite que la persona que hace la solicitud de designación tenga certeza sobre el pro-ceso que se va a seguir respecto a su petición y conozca sus derechos en cuanto a participación y notificación. También facilita que el resto de la ciudadanía sepa que se está eva-luando con rigor la solicitud que hizo la persona externa a la agencia. Por eso, el cumplimiento con la LPAU o con cualquier otro mecanismo similar sólo aplica cuando el proceso de designación de especie o hábitat surge de una inquietud de un ciudadano o de una entidad pública o pri-vada interesada en la conservación ambiental, y no cuando lo inicia el Departamento, que estudia rutinariamente el estado de las especies.
Las otras dos secciones del Artículo 3 se refieren a la lista de especies protegidas y ninguna hace referencia a la *706 LPAU o al procedimiento que se debe seguir para añadir especies a ésta. El Artículo 3.05 se limita a informar que los nombres de las especies que el Secretario ha determi-nado que están en peligro de extinción y las de especies vulnerables por su parecido con éstas aparecen en el Apén-dice 1 del Reglamento. Mientras, el Artículo 3.06 dispone el deber del Secretario del DRNA de revisar la condición de las especies incluidas en la lista al menos cada cinco años.
Lo mismo sucede con el Artículo 4, que reglamenta la Designación de Hábitats. El Artículo 4.01 brinda al Secre-tario del DRNA la facultad de determinar el hábitat natural de una especie en peligro o hacer cambios al mismo en cualquier momento. Los Artículos 4.02 al 4.04 limitan esa discreción al establecer los criterios que se deben conside-rar para designar el hábitat y decidir si es del tipo natural crítico o natural crítico esencial. Asimismo, el Artículo 4.05 dispone los elementos que se tienen que tomar en cuenta para modificar los hábitats. El Artículo 4.06 informa que la lista de los hábitats designados se encuentra en el Apén-dice 2. Además, señala que cualquier designación de hábi-tat crítico que hagan las agencias federales para especies dentro de la jurisdicción de Puerto Rico se acoge como una que cumple con todos los requisitos del Reglamento 6766 y se añade a la lista. En ninguna parte de esta sección se exige el cumplimiento con la LPAU.([13])
Lo que sí requiere el Reglamento 6766 al Secretario del DRNA es que publique un aviso, en dos periódicos de circulación general, informando cualquier designación de especie vulnerable o en peligro de extinción y de sus hábitats, así como cambios a éstas.([14]) Asimismo, le ordena garantizar la participación ciudadana en el proceso de designación de especies y de hábitats, de cambios en las condiciones y *707 de remociones en las listas, a través de vistas públicas anunciadas con treinta días de antelación.([15]) No exige que se cumpla con las demás disposiciones de la LPAU. Esto se debe a que el Reglamento 6766 fue adoptado para estable-cer los criterios que deben guiar al DRNA al hacer las de-terminaciones sobre designaciones. El acto de la designa-ción no es la reglamentación, sino un ejercicio autorizado derivado de ésta.
De esta manera, las leyes y los reglamentos relaciona-dos con la designación de especies en peligro de extinción y sus hábitats autorizan la determinación hecha por el DRNA en este caso y la regulan como una orden basada en un reglamento aprobado anteriormente y que contiene las bases para su expedición. La LPAU, en su Artículo 1.3, exceptúa este tipo de decretos de su marco de aplicación, al excluirlos expresamente de la definición de regla o reglamento. ([16]) Con ello, 1se facilita la implantación de la política pública de protección de las especies en peligro de extinción sin dejar de informar al público sobre las pro-puestas, permitirles participar en el proceso de evaluación de éstas y notificar la determinación final sobre el asunto. La publicación de la determinación final es la que permite que luego se puedan imponer las penalidades que establece el Artículo 6 del Reglamento 6766 a quienes violen las dis-posiciones del Reglamento en relación con cualquiera de las especies designadas y sus hábitats críticos.
En este caso, se cumplió con el procedimiento requerido para las designaciones hechas por el Departamento. Se no-tificó al público, mediante un aviso publicado en un perió-dico de circulación general en octubre de 2006, que los do- *708 cumentos sobre la propuesta de designar al coquí llanero como especie en peligro crítico de extinción y su hábitat como uno crítico esencial estaban disponibles en las ofici-nas del DRNA y en su portal electrónico.![17]) La propuesta final incluyó la descripción del coquí y su hábitat, análisis estadísticos de la presencia del coquí desde que se descu-brió, estudios topográficos e hidrográficos, mapas del área única en la Isla en que habita y estudios sobre la contami-nación de la zona por actividades humanas, entre otros detalles.![18]) Se informó al público sobre la propuesta del Departamento para la designación del hábitat del coquí llanero en el municipio de Toa Baja como natural crítico esencial y se anunciaron vistas públicas, en julio de 2007. En agosto de 2007, se celebraron vistas públicas en las que las peticionarias explicaron que se oponían a que parte del terreno propuesto se declarara hábitat crítico porque impe-día los planes de desarrollo y ciertas actividades de interés público que tenían programadas para esas áreas. También sometieron comentarios por escrito. Se nombró un panel técnico del DRNA para evaluar las objeciones. En noviem-bre de 2007, el panel emitió un informe en el que reco-mendó cambiar la delimitación del hábitat, reduciendo en más de ochenta cuerdas el terreno designado.![19]) El Depar-tamento acogió la recomendación. Ese mismo mes, el DRNA publicó, en dos periódicos de circulación general, un aviso en el que anunció la designación del hábitat del coquí llanero como uno crítico esencial.![20])
*709 Así, el DRNA cumplió con todo lo que el ordenamiento le exige para el tipo de designación que hizo. Para esa deter-minación, la Ley Orgánica del Departamento sólo requiere la celebración de vistas públicas y el Reglamento 6766 im-pone únicamente las vistas y un aviso público. La Ley de Vida Silvestre y el Reglamento 6766 ordenan al DRNA ac-tuar en conformidad con la LPAU solamente para resolver solicitudes de personas u organizaciones externas a la agencia que interesen que se designe como vulnerable o en peligro una especie o se proteja un hábitat. No era necesa-rio que el DRNA observara todos los requisitos de la LPAU, porque no estaba enmendando un reglamento, sino que es-taba haciendo una designación de especie y hábitat deter-minada luego de un análisis propio sobre su necesidad, se-gún lo permiten las leyes y los reglamentos que le aplican.
Por los fundamentos discutidos, confirmaría la Senten-cia del Tribunal de Apelaciones en cuanto a que no tenía jurisdicción para considerar la impugnación de la acción administrativa debido a que la designación de especie y hábitat no era una enmienda al Reglamento 6766, y devol-vería el caso al foro apelativo para que atienda los señala-mientos del recurso de revisión relacionados con el cumpli-miento del DRNA con los criterios establecidos en su Reglamento para la designación.

(1) Reglamento para Regir las Especies Vulnerables y en Peligro de Extinción, Departamento de Recursos Naturales y Ambientales (DRNA), Reglamento Núm. 6766 de 11 de febrero de 2004 (Reglamento 6766).

(2) Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sees. 2101-2201).

(3) En sus recursos de revisión ante el Tribunal de Apelaciones, además de argumentar que no se cumplió con el procedimiento establecido en la LPAU para enmendar un reglamento, las partes alegaron que el DRNA no consideró algunos de los criterios que exige el Reglamento 6766 para las designaciones de hábitat natural crítico esencial, incluyendo el impacto ambiental y social de la designación y que la evidencia científica estableciera que ese era el único lugar con las características necesarias para la supervivencia de la especie. El foro apelativo tenía jurisdicción para ejercer su función revisora en cuanto a estos señalamientos sobre la orden dictada por la agencia. Sec. 4.1 de la LPAU, 3 L.P.R.A. see. 2171.

(4) Art. 3 de la Ley Orgánica del Departamento de Recursos Naturales y Am-bientales, Ley Núm. 23 de 20 de junio de 1972, según enmendada, 3 L.P.R.A. see. 153.

(5) La Exposición de Motivos de la Ley Núm. 31 de 29 de septiembre de 1983 (1983 Leyes de Puerto Rico 458), que enmendó la Ley Orgánica del DRNA, señala que es imperativo que el Departamento posea todas las facultades y los poderes necesarios para la preservación de las especies de vida silvestre. Sobre la participa-ción pública en el proceso de designación de especies, indica que es importante para que el Departamento cuente con información amplia para tomar las medidas más provechosas para la conservación de las especies.

(6) Art. 5(0 de la Ley Núm. 23, supra, 3 L.P.R.A. sec. 155(0.

(7) Art. 3 de la Ley de Vida Silvestre, Ley Núm. 241-1999 (12 L.P.R.A. sec. 107a).

(8) Art. 4 de la Ley 241-1999 (12 L.P.R.A. sec. 107b).

(9) Art. 3 de la Ley 241-1999 (12 L.P.R.A. sec. 107a).

(10) Art. 9 de la Ley 241-1999 (12 L.P.R.A. sec. 107g(i)).

(11) De hecho, la LPAU sólo aparece mencionada dos veces en todo el Reglamento 6766: en el Art. 3.03 y en el Art. 1.02, sobre Base Legal, que indica que el Reglamento es promulgado bajo la autoridad conferida al DRNA por su Ley Orgá-nica, la Ley de Vida Silvestre y la LPAU.

(12) Art. 3.03 de la Reglamento 6766.

(13) Los otros tres artículos de la sección sobre hábitats a los planes, los equipos y la adquisición de terrenos para la recuperación y supervivencia de las especies. Arts. 4.07-4.09 del Reglamento 6766.

(14) Art. 2.07 del Reglamento 6766. Este artículo es parte de las Disposiciones Especiales generales del Reglamento.

(15) Art. 2.08 del Reglamento 6766.

(16) “Quedan excluidos de esta definición [de regla o reglamento]: (4) Órdenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emitan o puedan emitir en el futuro por otras agencias, y que me-ramente realizan una determinación de uno o varios parámetros de reglamentación con base a un reglamento previamente aprobado y que contiene las normas para su expedición”. (Énfasis suplido). Sec. 1.3(l)(4) de la LPAU, 3 L.P.R.A. sec. 2102(Z)(4).

(17) Las partes peticionarias reconocen que el coquí llanero debe designarse especie en peligro crítico de extinción; lo que objetan es la delimitación de su hábitat crítico esencial.

(18) DRNA, Designación del coquí llanero como especie en peligro crítico de extinción, y Designación del hábitat natural crítico esencial del coquí llanero, julio 2007.

(19) La objeción del municipio continuó porque los terrenos que se liberaron no coinciden con las 83 cuerdas que habían identificado para su plan de cierre del vertedero de Toa Baja, que eran los que interesaban que se excluyeran.

(20) Sentencia del Tribunal de Apelaciones, págs. 2-5; Certiorari CC-2008-808 del municipio de Toa Baja, págs. 2-5; Certiorari CC-2008-820 de Sabana Seca Land Management, págs. 4-8; Alegato del DRNA, págs. 3-8.